New Jersey Department of Labor,
Workmen's Compensation Bureau.

JOSEPH STRETKOWICZ, PETITIONER, v. WILLIAM SPEN-
CER & SON CORPORATION, RESPONDENT.

Decided May 19, 1936.

For the petitioner, *Hoberman & Hoberman.*

For the respondent, *Charles Landmesser.*

\*     \*     \*     \*     \*     \*     \*

Respondent filed an answer setting forth that the New
Jersey Compensation Court was without jurisdiction in this
matter; and that the petitioner had already been compen-
sated, pursuant to an award by the United States Employes
Compensation Commission.

The petitioner was called to the stand in his own behalf
and testified that he was employed by the respondent and
that his duties consisted of loading and unloading boats,
lighters and barges, and that while engaged in wheeling a
hand truck onto a boat, which was on the Hudson river along
the Jersey City shore, on the day in question, and still on
the gangplank leading to said boat, his speed was increased
because of the downgrade of the gangplank, and he was caused
to lose control of said hand truck, with the result that same
fell from his hands forcing him into a stanchion on said boat,
and that the hand truck fell against his left leg causing his
injury. He further testified that he was treated for his
injuries by Dr. Joseph F. Londrigan and also at the Medical
Center Hospital of Jersey City. The only other evidence
introduced on behalf of the petitioner was a clinical medical
chart of the Medical Center Hospital, which showed that the
petitioner had appeared there for treatment on several
occasions.

The respondent introduced the testimony of John A. Willard, referee of the United States Employes Compensation Commission, who testified that the said United States Employes Compensation Commission had previously taken jurisdiction of this claim and had duly made an award in favor of the petitioner, which had been paid in full by the respondent. The testimony of John Mizourczyk and John Hrno, co-employes with the petitioner, was also introduced, and they testified that while the petitioner was on the boat and engaged in wheeling the hand truck, another employe caused the petitioner to alter his course, as a result of which he lost control of his vehicle and was forced into a stanchion on the boat. Dr. Joseph F. Londrigan also testified in behalf of the respondent to the effect that he treated the petitioner following the accident, for a bruised left leg, and that the extent of his disability was only of a temporary nature and did not extend beyond a period of two or three weeks.

It was stipulated by counsel that the Hudson river, upon which the boat was docked, was a navigable waterway.

Following this a motion was made in behalf of the respondent, urging a dismissal of the petition for the reason that the court was without jurisdiction in that the boat at the time of the aforesaid accident was docked in navigable water on the Hudson river along the shore of Jersey City, New Jersey, and that this claim was duly disposed of by the United States Employes Compensation Commission, upon the theory that the petitioner was engaged in a maritime occupation.

It was urged on petitioner's behalf, that opinion No. 5 of the United States employes compensation commission would govern in this case.

Opinion No. 5 states:

"Employes engaged in maritime employment on a vessel are covered by the Longshoremen's and Harbor Workers' Compensation act when leaving the vessel until they are entirely free from a gangplank extending from the vessel to the pier. Employes going aboard the vessel by means of a gangplank to engage in maritime employment are covered by the act only after they reach the vessel."

Opinion No. 5 was based in part upon the decision in the case of the *Atna*, 297 *Fed. Rep.* 673, a decision of the United States District Court for the Western District of Washington, Southern Division, rendered March 31st, 1924. In that case the court said, in part, "if he [the injured stevedore] is passing from the shore to the ship, the admiralty has not jurisdiction until he has reached the ship, and is entirely separated from the shore."

In a subsequent case, namely, the *Brand*, decided October 8th, 1928, 29 *Fed. Rep.* (2*d*) 792, a similar question was considered by the United States District Court for the District of Oregon, involving an injury sustained by a longshoreman going across a gangplank to a vessel. In that case the court made the following statement, citing the *Atna, supra:*

"The 'gangplank' is a connecting link between the dock and ship. It should be considered as an extension to the land in passage from the dock to the ship, and in passage from the ship to the dock as an extension to the ship. The status of the libelant as a dock workman had not changed at the time of his injury."

Attention, however, is invited to the case of *Nogueira* v. *New York, New Haven and Hartford Railroad Co.*, 281 *U. S.* 128. In that case the employe was engaged in loading freight upon freight cars located upon a float. He was using a hand truck in carrying a bale of paper, and as the float was several feet lower than the dock from whence he was moving the freight, it was necessary to move the bale over a plank which ran from the dock to the middle of the float at a steep incline. While moving down the plank, the truck used for this purpose got out of control and skidded down the plank, throwing the employe on the floor of the float, resulting in his injury. The United States Supreme Court in that case held that the Longshoremen's act applied. The importance of this case lies in the fact that at the time of injury the employe was approaching the float or vessel *from the dock* by means of a plank, and had not reached the float or vessel when the accident occurred.

Cases of *Minnie* v. *Port Huron Terminal Co.* 55 *S. C. R.* 884, and *Kenward* v. *The Admiral Peoples*, 55 *Id.* 885. Both

cases were decided on June 3d, 1935. In the Kenward case the petitioner was injured while leaving the vessel by way of the gangplank. The court in this case made the following statement:

"The basic fact in the instant case is that the gangplank was a part of the vessel. It was a part of the vessel's equipment which was placed in position to enable its passengers to reach the shore. It was no less a part of the vessel because in its extension to the dock it projected over the land. Thus, while libelant was on gangplank, he had not yet left the vessel. This was still true as he proceeded to the shore end of the plank. If while on that part of the vessel he had been hit by a swinging crane and had been precipitated upon the dock, the admiralty would have had jurisdiction of his claim."

Upon consideration of the decisions of the Supreme Court in the Nogueira and Kenward cases, cited above, the view expressed in opinion No. 5, to the effect that employes going aboard the vessel by means of a gangplank to engage in maritime employment, are covered by the act only after they reach the vessel, may no longer be tenable. It would appear from the latter case that a gangplank is considered as a part of the vessel or a part of the vessel's equipment extending to the dock even where it projected over the land. This conception of the gangplank would apparently require consideration of the injuries occurring thereon, in so far as employes otherwise coming within the purview of the Longshoremen's act are concerned, as occurring upon the navigable waters of the United States.

Considering all the circumstances surrounding the case *sub judice* and in view of the later rulings of the Supreme Court, I am of the opinion that the bureau does not have jurisdiction.

I therefore find and order that the petitioner, at the time of the accident, as a result of which he was injured, was engaged in a maritime occupation, and that the state forum is without jurisdiction, and the petition herein filed be and it hereby is dismissed.

JOHN C. WEGNER,
*Deputy Commissioner.*